IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

IKON OFFICE SOLUTIONS, INC.,           :
                                       :
                    Plaintiff,         :          CIVIL ACTION
                                       :
v.                                     :          NO. 05-
                                       :
MARTHA SOUTHERLAND and                 :          2:05CV959-D
ABS BUSINESS SYSTEMS, INC.,            :
                                       :
                    Defendants.        :
                                       :

## COMPLAINT

Plaintiff IKON Office Solutions, Inc. ("IKON" or "Plaintiff") hereby brings the

following Complaint, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for injunctive

and other relief against Defendants Martha Southerland ("Southerland") and ABS Business

Systems, Inc. ("ABS, Inc.") (Southerland and ABS, Inc. to be hereinafter referred to collectively

as "Defendants") for (i) breach of contract; (ii) misappropriation of trade secrets; (iii) breach of

the duty of loyalty and/or fiduciary duty; (iv) unfair competition; (v) interference with employee

contractual relations; and (vi) interference with actual and prospective business relations, and, in

support thereof, avers as follows:

### I.  THE PARTIES

1.      IKON is a corporation organized and incorporated in the State of Ohio,

maintaining its principal place of business at 70 Valley Stream Parkway, Malvern, Pennsylvania,

19355, and transacting business in this judicial district at 2200 Riverchase Center, Building 700,

Birmingham, Alabama 35244.  IKON is a corporate citizen of the Commonwealth of

Pennsylvania and the State of Ohio.

2.      Defendant Southerland is a former IKON sales representative who was employed

until on or about May 27, 2005 with IKON and based in Plaintiff IKON's Montgomery,

794688.1

Alabama sales territory.  Southerland is a citizen, resident and domiciliary of Alabama last known to reside at 1832 Edinburgh Street, Prattville, Alabama 36066.

3.      Subsequent to her termination of employment with IKON, Southerland took employment with an IKON competitor doing business under the name ABS Business Systems, Inc., the named corporate Defendant herein.

4.      Defendant ABS Business Systems is an Alabama corporation with a registered office and/or transacting business in this judicial district at 898 Plantation Way, Montgomery, Alabama 36117.

## II.  JURISDICTION AND VENUE

5.      Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332.  The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65. Venue is proper in this judicial district under 28 U.S.C. § 1391(a), as it is the district in which, inter alia, the conduct complained of arose, the injury complained of is being inflicted, and in which Defendants currently reside, transact and conduct business.

## III.  THE FACTS

6.      IKON is engaged in the business of, among other things, selling, leasing and servicing office equipment and systems.

### A.      Defendant Southerland's IKON Employment and Non-Compete

7.      On or about February 4, 2002, Defendant Southerland commenced her employment with IKON.

8.      On or about that same date, February 4, 2002, Defendant Southerland was presented with and thereafter signed and entered into a Confidentiality and Non-Compete Agreement (the "Southerland Agreement") with IKON.  A true and correct copy of Defendant

794688.1

Southerland's Agreement, dated February 5, 2002, is attached hereto, made part hereof, and marked as Exhibit "A."

9.    As of the date of her resignation from IKON on or about May 27, 2005, Southerland was an IKON sales representative responsible for servicing the accounts of at least 176 IKON customers accounting for in excess of Eight Hundred Ten Thousand Dollars ($810,000) in 2004 IKON sales revenues.

**B.    Southerland's IKON Employment Background**

10.    Defendant Southerland has at all times been an employee of IKON since the inception of her employment with the company in February 2002.  Southerland was a Major Accounts Executive responsible in at least the last two years of her employment with IKON for the major accounts serviced in IKON's Montgomery, Alabama sales territory for the sale, lease and other provision of office equipment, systems or services.  Throughout her employment with IKON, Southerland was provided with introductory, continuing and/or advanced training, was compensated at all times during her employment with IKON, and was provided with extensive use and enjoyment of IKON facilities, sales and/or technical support services, sales and account-related records, product inventory, computer equipment, technology, software and systems.

11.    As set forth below, Southerland was given pre-existing IKON customers to service; she received, acquired and used confidential information concerning IKON customers and IKON's business; she was given exclusive assignments of IKON territories and/or accounts; and she had regular contacts with IKON's customers such that IKON's customers associate the goodwill of IKON with Southerland, thereby allowing Southerland and ABS Inc., through and as a result of Southerland's affiliation with ABS, Inc., the ability to draw customers away from IKON through and as a result of the breach of IKON's contractual, trade secret and proprietary rights.

12.    Throughout the term of Southerland's employment, IKON paid all necessary and appropriate business expenses, provided her with abundant sales and service opportunities, and provided Southerland with all agreed, reasonable, available and/or necessary IKON sales personnel, benefits, operational, financial, product, bookkeeping, business expense and servicing support at all times.

13.    Further, IKON provided Southerland with secretarial and staff services, sales assistance, research, the benefit of IKON advertising, goodwill and name recognition, the use of experts and highly trained technicians in analog and digital copier sales and maintenance, networking, business systems, interconnectivity solutions, electronic imaging, hardware and software products, technology training, copier and printing systems, other office technology products and services, and provided Southerland with promotional, marketing and sales support.

14.    In addition to the foregoing, IKON provided Southerland with customer accounts, customer referrals, reassignments of former and current IKON accounts, customer leads and account assignments, and new accounts generated by IKON's goodwill, name recognition, reputation, promotions, and national and/or local marketing and advertising campaigns. As a result of the foregoing, Southerland learned the industry, became associated with, and acquired the goodwill of IKON customers.

15.    Southerland became intimately familiar with all aspects of the IKON customer accounts she serviced and/or supervised, and accounts serviced by IKON within the Montgomery, Alabama sales area, and became the repository of many years of goodwill, account-related knowledge, and investment built up on IKON's behalf. As a result, absent enforcement of her non-competition covenants with IKON, customers doing business with IKON have been, and/or could be, drawn away by Southerland, and by ABS Inc. as a result of

Southerland's sales activities on its behalf, following the termination of Southerland's employment with IKON.

16.     In addition, by her association with IKON, based on IKON's name recognition and standing, and based upon her ability to affirmatively or implicitly represent or imply that she left IKON due to purported deficiencies in IKON's business, Southerland (and ABS, Inc.) can seek to undermine, and diminish and divert IKON's goodwill and reputation and to thereby both deprive IKON of the market advantages in which it invested and allow ABS, Inc. to divert IKON customers.

17.     All of the customers serviced at IKON by Southerland were generated by and through her employment at IKON.  Southerland was reassigned, and otherwise acquired for servicing, a significant number of key accounts and sales opportunities by IKON after these accounts had been previously serviced by other and/or prior IKON sales representatives and after IKON had already invested years of time, effort and expense into the acquisition and development of the customers' IKON accounts.

18.     At the time Southerland left her employment with IKON, she was an IKON Major Account Executive responsible for IKON's Montgomery area sales territory.  IKON's Montgomery, Alabama marketplace sales territory consists of the Alabama counties of Autauga, Elmore, Macon, Lowndes, Montgomery, Bullock and Pike.

19.     In her capacity as an IKON sales representative for IKON's Montgomery sales territory, Southerland was assigned to at least One-Hundred and Seventy-Six (176) IKON customers generating over $810,000 in gross IKON revenues in 2004, the last full calendar year in which she was employed with IKON.

20.     Southerland derived significant benefit from the expenses paid by IKON, the customer access, name recognition and reputation IKON provided to her, the contacts, the

development of sales proposals, the assignment to actual and prospective customers, and the access acquired to and/or the development of valuable and/or confidential information concerning, and goodwill with, IKON's actual and prospective customers. Southerland also learned IKON's customers, key accounts, sales proposals and marketing plans relating to gaining new customer and/or sales opportunities within IKON's Montgomery, Alabama sales territory.

21.    By virtue of Southerland's training and employment at IKON, she gained access to the books and records of IKON, the confidential information contained therein, and especially the identity of: (a) IKON's customers, and potential customers, to which she had been assigned or whose accounts she supervised, including their names and addresses, management executives, account managers and/or contact persons, their current business terms and transactions, transaction histories, purchasing and servicing requirements, costs and prices, leasing terms, service agreement terms, preferences and needs, likes and dislikes, sales-related inquiries, service-related inquiries, IKON account strengths, vulnerabilities and weaknesses, packaging features, profitability considerations, distribution and delivery systems, training techniques and business efficiencies; (b) IKON's key personnel, including their assigned accounts, key customers, associated sales revenues, performance, product knowledge and key profitability considerations; (c) IKON's marketing strategies, pricing and packaging structure, schedules and strategies, product design and initiatives, discount policies, future business plans, vendor identities, evaluations and strategies, training techniques, strengths and weaknesses with its customers, and a wide range of profitability and cost considerations; and (d) other business and customer-related information that provides IKON with a significant advantage or "head start" over its competitors.

**C.    Southerland's Specific Contractual Obligations**

22.    As set forth above, Southerland signed a non-compete agreement with IKON in consideration of her employment and/or continued employment with the company and for other benefits, advantages and opportunities she received in and through her IKON employment.

23.    In pertinent part, the terms, conditions and provisions of the Southerland Agreement provide that Southerland would gain employment and/or continued employment with IKON, a position in which Southerland would acquire the benefit of IKON's investment in her training, the development of her career, by the opportunities gained through her sales and/or service activities, and/or by her becoming entrusted with and otherwise being given access to IKON's confidential and trade secret information and customer relationships and relationships, and/or by her availing herself of IKON's reputation, goodwill and name recognition.

24.    As set forth above, IKON provided valuable consideration to Southerland for the contractual promises to which she agreed and IKON has satisfied all conditions precedent.

25.    Southerland agreed in the Southerland Agreement that, in the event of her termination of employment with IKON, and for a period of eighteen (18) months thereafter, she would not compete with IKON in the territories she had previously been assigned by IKON in the two year period prior to her termination, and that she would not directly or indirectly solicit, encourage or induce to do business with an IKON competitor or any IKON customers.

26.    Specifically, the Southerland Agreement signed by Defendant Southerland provides as follows in these respects:

8.    <u>Non-Competition.</u>    <u>In consideration of the mutual promises</u> contained in this Agreement, the sufficiency of which is acknowledged by the parties, <u>Employee agrees that</u> during the term of his/her employment and **<u>for a period of eighteen (18) calendar months</u>** after termination of employment from the Company (whether voluntary or involuntary), **Employee will not**, directly or indirectly, either as principal, agent, manager, employee, partner, director, officer, consultant or shareholder (except for investments

of no greater than 5% of the total outstanding shares in any publicly traded company), on his/her behalf or on behalf of any other entity:

a.   **Become associated or affiliated with, employed by,** or financially interested in any business operation which engages in competition with the Company's Business, as defined herein.

b.   Make any effort, directly or indirectly, to **solicit, encourage, or induce any customer** or prospective customer of the Company **to obtain business and/or services** from any entity (other than the Company) which is engaged in any activity **competitive with the Company's Business;**

c.   Cause or attempt to cause any present or prospective customer of the Company **to reduce its business** with the Company . . .

9.   *Limitation on Scope.*  In recognition of the broad geographic scope of the Company's business and the ease of competing with the Company in any part of the United States, the restrictions on competition set forth in paragraph 8 are intended to cover the following geographic areas:

**Any area assigned** to Employee or under Employee's management, control and/or responsibility during the **two (2) year period immediately preceding** the termination of Employee's employment.

See Exhibit "A" attached hereto at ¶¶ 8-9 (emphasis added).

27.   In addition, in her Agreement, Defendant Southerland specifically agreed to the issuance of preliminary and permanent injunctive relief to prevent the violation of the terms to which she had agreed.  Specifically, Southerland agreed with respect to the issuance of protective injunctive relief as follows:

13.   *Company's Right to Obtain an Injunction.*  Employee acknowledges that the Company will have no adequate means of protecting its rights under Paragraphs 7, 8, 9, and 10 of this Agreement other than by securing an injunction (a court order prohibiting Employee from violating the Agreement). Accordingly, Employee agrees that the **Company is entitled to** enforce this Agreement by obtaining **a temporary, preliminary, and/or permanent injunction** and any other appropriate equitable

relief. If a dispute arises under this agreement, Employee shall have a duty to notify immediately the Company of the name, address, and telephone number of Employee's legal counsel. In the event Employee fails to provide this information, Employee agrees that the Company may seek a temporary restraining order to enforce the provisions of this Agreement on an ex parte basis. Employee acknowledges that the Company's recovery of damages will not be an adequate means to redress a breach of this Agreement. Nothing contained in this paragraph, however, shall prohibit the Company from pursuing any remedies in addition to injunction relief, including recovery of damages. .

See Exhibit "A" attached hereto at ¶ 13 (emphasis added).

28.    Southerland further stipulated and agreed that she would be responsible for the

reimbursement of IKON's legal fees in the event IKON were to recover any injunctive relief or a

final judgment which included any finding that she had breached any obligations in her

Agreement:

15.    *Attorneys' Fees.*

(a)    If the Company seeks a restraining order, an injunction or any other form of equitable relief, and recovers any such relief, Employee shall reimburse the Company for its reasonable attorneys' fees, court costs, and other costs incurred obtaining that relief (even if other relief is denied). The parties agree that this is reasonable.

(b)    If the Company shall obtain a final judgment of a court of competent jurisdiction, subject to no further appeal, pursuant to which Employee shall be determined to have breached his/her obligations under this Agreement or made any misrepresentations, the Company shall be entitled to recover, in addition to any award of damages, reasonable attorneys' fees, costs, and expenses incurred by the Company when obtaining such judgment. Any relief awarded under this subparagraph (b) shall be in addition to any other relief awarded under subparagraph (a).

See Exhibit "A" attached hereto at ¶ 15 (emphasis added).

29.    In addition, Southerland acknowledged and was otherwise obligated to abide by

IKON's Employee Handbook provisions, which likewise require strict confidentiality of IKON's

business and customer information:

**CONFIDENTIALITY.** <u>Protecting confidential company information is</u> **<u>extremely important</u>.** Confidential company information is anything that IKON considers relevant to its status or operations that it has not disclosed or does not want to disclose publicly. Examples include: sales and marketing plans, customer lists, price lists, customer service requirements, costs of providing services and equipment, equipment maintenance costs, information relating to research, finance, accounting, sales, personnel and operations, and models, drawings, memoranda and other materials, documents or records of a proprietary nature.

*Handling Confidential Information.* Because we are open in our communications within the company, you may be aware of or have access to confidential information. The release of confidential information, whether intentional or unintentional, can injure IKON competitively and in other ways. Confidential company information should never be disclosed to any company or individual, including other employees, without proper authorization.

Any breach of confidentiality will be taken very seriously and may subject you to termination and possibly legal action. If you are unsure if something is confidential, or if you have any questions regarding your responsibilities in dealing with confidential materials, speak with your manager.

<u>See</u> Exhibit "B" hereto; excerpt from IKON Employee Handbook (emphasis added).

30.     Southerland likewise agreed, on an annual basis, to abide by IKON's Code of

Ethics, which provides, in pertinent part, as follows:

**Confidential, Proprietary & Other Nonpublic Information**

IKON employees are prohibited from disclosing confidential, proprietary or other nonpublic information about IKON, its business interests, employees, customers, or suppliers, except as provided below.

**A.     Disclosure of IKON's Confidential, Proprietary or Other Nonpublic Information to IKON Employees**

The disclosure of IKON's confidential, proprietary or other nonpublic information, whether intentional or unintentional, can injure IKON financially and competitively. Such information about IKON, its business interests, employees, customers or suppliers should not be disclosed to any other employee unless there is a definite business need to know such information.

**B.    Disclosure of IKON's Confidential, Proprietary or Other Nonpublic Information To Third Parties**

IKON's confidential, proprietary or other nonpublic information should not be disclosed to anyone outside the company without prior authorization from your manager, working in consultation with IKON's Law Department.    A written confidentiality agreement will be required to disclose such information to a third party.

**C.    Securing IKON's Confidential Information**

IKON employees must secure documents containing confidential, proprietary or other nonpublic information from unauthorized access and public view.    This includes documents stored in electronic format.    When such information is being discarded, steps must be taken to ensure proper destruction.

A copy of the relevant excerpt from IKON's Code of Ethics is attached hereto as Exhibit "C" (emphasis added).

31.    On or about May 27, 2005, Defendant Southerland submitted her resignation to IKON.

32.    Immediately following her resignation, Southerland commenced employment with an IKON competitor, Defendant ABS, Inc., which does business in the same Montgomery area sales area which Southerland serviced in her former employment at IKON.

33.    Defendants, including Defendant ABS, Inc., were specifically notified and advised in writing of the contractual, trade secret, confidentiality and other obligations owed by Southerland to IKON.    Defendant ABS, Inc. was provided with a true and correct copy of the Southerland Agreement Southerland had signed with IKON and was otherwise on full, actual and constructive notice of these obligations at all times relevant.

34.    Upon information and belief, Defendants have solicited IKON employees to become employed with ABS, Inc. and/or Defendants have acted in concert, assisted one another,

or otherwise conspired to solicit and/or recruit IKON employees to terminate their association with IKON and to affiliate themselves with Defendant ABS, Inc.

35.    IKON believes, and therefore avers, that Defendants Southerland and ABS, Inc. have conspired with one another to recruit IKON employees to cooperate in the violation of their contractual and trade secret obligations, and to otherwise plan and coordinate the diversion of IKON's customers and business as a result of their affiliation with Defendant ABS, Inc.

36.    IKON further believes, and therefore avers, that Defendants, including Defendant ABS, Inc., conspired with one another to plan and coordinate the removal and/or use of IKON's customer list and account information, to target and divert key IKON customers to Defendant ABS, Inc., and to share information with each other and with other ABS, Inc. employees to identify customers, customize their marketing efforts, time and capitalize upon the availability of known or anticipated sales opportunities, capitalize upon IKON sales vulnerabilities, offset IKON sale strengths, solicit and acquire IKON customers, account information and revenues.

37.    Defendant Southerland has made false, misleading or disparaging representations to one or more IKON customers, including representations that IKON had forged signatures and/or forged the terms of the customer's lease or contract with IKON, and that IKON was closing its business, not serving the Montgomery sales area, or had otherwise ceased doing business in the Montgomery sales area Southerland had serviced in her prior employment with IKON.

38.    In direct violation of her obligations, Southerland has competed with IKON in the same Montgomery sales area and with respect to the same actual and potential customers to which she was assigned or whose accounts she supervised or serviced while at IKON.  In addition, Defendant Southerland has solicited and/or serviced customers formerly serviced by

her in her former capacity as an IKON sales representative, and is diverting, or assisting and/or attempting to divert, IKON customers to ABS, Inc.

39.     Defendant ABS, Inc. has intentionally and knowingly encouraged, assisted, directed, participated and/or acted in concert with Southerland to induce, cause and allow, and to continue to induce, cause, allow and/or capitalize upon the breach of the contractual, trade secret and confidentiality obligations owed by Southerland to IKON.

40.     Defendants have diverted IKON customers, accounts and business from IKON to Defendant ABS, Inc. as a result of the breaches of contract and confidentiality obligations, misappropriation of trade secret and confidential information, interference with the contractual obligations owed by Southerland to IKON, and in breach of other obligations to IKON as described herein.

41.     Each of the Defendants, including ABS, Inc., has failed to cease soliciting and doing business with IKON customers Southerland solicited or assisted in soliciting in breach of her contractual, trade secret and confidentiality obligations to IKON, and has failed to cease such solicitations and conduct of business even after receiving written copies of the Southerland Agreement, notification of their violations and IKON's claims, and demands by IKON that Defendants cease and desist from, and/or otherwise remedy, such violations.

42.     Defendants have diverted and threatened to divert IKON customers, and are causing and threatening to cause IKON to suffer an incalculable amount of actual past, present and future lost business and business opportunities, and thereby causing and threatening to cause IKON harm and losses far in excess of the jurisdictional minimum amount, as a direct and indirect consequence of their breach of obligations to IKON.

43.     Defendants, having previously breached or interfered with the above-described contractual, trade secret and other obligations owed to IKON, continue to capitalize on their

breaches for the benefit of ABS, Inc. and are continuing to solicit and engage in business with

IKON customers formerly supervised by, serviced by and/or assigned to Southerland at IKON.

Defendant ABS, Inc., with knowledge of the terms of the Southerland Agreement, and with

knowledge that customers to whom the terms of Southerland's contractual obligations would

apply have been acquired or approached by ABS, Inc. as a result of activities and solicitations by

Southerland in breach of her obligations to IKON, continues to capitalize upon and benefit from

Southerland's continued use and disclosure of confidential and trade secret IKON information

and by Southerland's activities in wrongful competition with IKON, by Southerland's

solicitations of IKON customers, by Defendants' diversion of business of IKON customers, by

their conduct of business and their servicing of said customers, and by their misrepresentations to

IKON customers concerning IKON's business, conduct of business, and availability and

commitment to offer its products and services and to otherwise conduct business and sales in the

Montgomery sales area.

44.    Upon information and belief, Southerland has removed IKON customer

information without authorization and/or she has used, relied upon or otherwise misappropriated

valuable IKON customer information for the benefit of Defendant ABS, Inc. and has otherwise

acted to nullify the valuable customer information and sales advantages developed by and

through IKON's substantial investment and expenditure of significant amounts of its past and

present time, effort and money.

45.    Defendants have used, and/or are using and capitalizing upon, the goodwill and

knowledge that IKON maintains with and concerning its customers, and the advantages thereby

conferred by IKON upon Southerland in her former employment, to solicit, service and convert

IKON customers, business opportunities, customer goodwill and future relations to Defendant

ABS, Inc.

46.    Defendants have wrongfully used and/or converted the information developed by and through IKON to conduct its business and to maintain an advantage over its competitors, including, but not limited to, the names, addresses, contact persons, account information, price and purchase information, timing considerations, knowledge of pending needs or proposals, customer preferences, priorities and problems, price and cost considerations, contract or lease expiration dates, equipment and systems configurations, equipment age and capacity characteristics, service agreement terms and expirations, and strategies concerning IKON's customer base and accounts, and Defendants have solicited and serviced, or are soliciting and servicing, and/or continuing to solicit and/or service, IKON customers to whose accounts Southerland was formerly assigned, whose identity and/or other account-related information she learned in a confidential capacity at IKON, or which Southerland formerly serviced, whose accounts she supervised and/or with whom she had material contact at IKON, and/or IKON accounts for whom Southerland otherwise learned of, gained account-related knowledge concerning, acquired access to, had assigned to her, or for which she was directly or indirectly responsible.

47.    IKON alleges, upon information and belief, that Defendants have engaged in and/or are continuing to engage in, inter alia, the following acts:

(a)    converting the information contained in confidential IKON business records, specifically including customer lists and account names, addresses, telephone numbers, business dealings, purchasing requirements, pricing policies, terms and information, sales proposals, volume and discounting variables, customer contract terms, transaction histories, service records, account status and vulnerabilities, marketing strategies, product specifications, customer preferences and needs, packaging arrangements, timing considerations, lease and service agreement expiration dates, system configurations, training techniques and strategies

and/or other confidential account-related information concerning the customers Southerland

learned of, gained access to, serviced, supervised and/or had material contact with at IKON;

      (b)    transmitting verbally, in writing, or otherwise, to or on behalf of

themselves and/or their new employer, said account related information and other information

contained in the records of IKON and described hereinabove;

      (c)    soliciting IKON's customers to terminate their relationship with IKON

and conduct business with and/or through Defendants, including Defendant ABS, Inc., and

engaging and/or attempting to engage in business with IKON customers through and as a result

of their improper conduct, their breaches of contract and/or their interference with the

contractual, trade secret and common law obligations owed to IKON;

      (d)    soliciting, recruiting or hiring Plaintiff's employees to leave their

employment with Plaintiff and/or to take employment with Defendant ABS, Inc.; and

      (e)    other such acts contrary to the terms, conditions, and provisions of the

individual Defendants' Agreements (see Exhibits "A" and "B" hereto), and IKON's trade secret,

property, proprietary and other statutory and/or common law rights.

## COUNT I

### CLAIM FOR INJUNCTIVE RELIEF

48.    The averments of Paragraphs 1 through 47 are incorporated by reference herein

with the same force and effect as if set forth in full below.

49.    By virtue of the foregoing, IKON has demonstrated a likelihood of success on the

merits and that a balancing of the equities favors the issuance of an injunction against

Defendants.

50.    Unless Defendants are temporarily and preliminarily enjoined from the foregoing

conduct, IKON will be irreparably harmed by:

(a)     Disclosure of trade secrets, customer lists, business methods and strategies, and other confidential information which are solely the property of IKON and its clients;

(b)     Loss of confidentiality of the information contained in customers' records, loss of confidentiality of customers' business and financial dealings, loss of confidence and trust of customers, loss of customers' goodwill, and loss of business reputation; and

(c)     present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

51.     IKON has no adequate remedy at law.

WHEREFORE, IKON respectfully requests that:

(a)     Defendant Southerland be immediately enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Defendant ABS, Inc., until hearing and thereafter until further Order of the Court, from doing any of the following:

(i)     engaging in any activity, with any individual or entity, competitive with the sale of Plaintiff's office products or services similar to those sold by Plaintiff within the territories to which Southerland was assigned during her last two years of employment with Plaintiff;

(ii)     soliciting or attempting to solicit business for the servicing or sale of products similar to or competitive with those sold by Plaintiff for any customer of IKON and, further, from accepting any business from any of said customers whom Southerland, or anyone acting on Southerland's behalf, has solicited for the benefit of Defendant ABS, Inc. at any time in the past following the termination of Southerland's employment with Plaintiff;

(iii)    soliciting, recruiting or hiring any of Plaintiff's employees to leave their employment with Plaintiff and/or to take employment with Defendant ABS, Inc.;

(iv)    using, disclosing, or transmitting for any purpose, including for the purpose of soliciting or preparing to solicit said customers, the information contained in the records of IKON, including, but not limited to, the names, addresses and account-related information concerning said customers, including information concerning IKON's marketing, pricing, volume or discount terms, packaging and product information, leasing and servicing terms, lease expirations, service agreement expirations, product specifications, customer preferences, transaction histories, customer plans and inquiries, sales proposals, profitability considerations, equipment configurations, distribution, delivery and vendor network information, and other business strategies and information.

(b)    Defendants, and anyone acting in concert or participation with Defendants, including any agent, employee, officer or representative of Defendant ABS, Inc., be further ordered to return to IKON any and all information pertaining to IKON customers, their identities, their business dealings, IKON's business methods or strategies, prices, packaging, profitability, sales representatives, lease terms or lengths, service agreement terms or lengths, past transactions, customer plans, past inquiries and communications, marketing strategies, equipment configurations, volume usages, product specifications, customer preferences, contract expiration dates, account strengths or weaknesses and/or other valuable and confidential business information, whether in original, copied, computerized, handwritten, or any other reproduced form, and otherwise purge any such information from their possession, custody, or control within 48 hours of notice to Defendants or their counsel of the terms of the Court's Order, provided,

however, that any information so purged shall be printed prior to purging and returned to IKON

pursuant to the preceding terms of this paragraph.

## COUNT II

### BREACH OF CONTRACT

52.    The allegations of Paragraphs 1 through 51 are incorporated herein by reference

with the same force and effect as if set forth in full below.

53.    Southerland has violated the terms of her Agreement with IKON.  See Exhibits

"A" and "B" attached hereto.

54.    Southerland is continuing to violate her contractual obligations.

55.    As a consequence of the foregoing, IKON has suffered and will continue to suffer

irreparable harm and loss.

## COUNT III

### MISAPPROPRIATION OF TRADE SECRETS,
### ALABAMA UNIFORM TRADE SECRETS ACT,
### ALABAMA CODE §§ 8-27-1 to 8-27-14

56.    The allegations of Paragraphs 1 through 55 are incorporated herein by reference

with the same force and effect as if set forth in full below.

57.    The books and records of IKON, the confidential information contained therein,

including the identity of IKON customers, their names and addresses, agents and account

managers, business and financial dealings, the transactions in their IKON accounts, purchase

requirements, purchasing history and patterns, lease and servicing terms and conditions, lease

service agreement lengths, expirations and terms, equipment configurations, customer plans,

preferences and communicated needs, interconnectivity opportunities, profitability

considerations, IKON's strengths and weaknesses with its customers, and other business and

financial information concerning IKON products, prices and pricing schedules, profitability

considerations, marketing strategies, leasing terms, vendors, costs, training techniques,

distribution and delivery systems, and/or other account and market considerations described

above, are trade secrets subject to protection under the <u>Uniform Trade Secrets Act</u>, ALABAMA

CODE §§ 8-27-1 to 8-27-14.

58.    This information is a compilation of information which derives independent

economic value by not being accessible, through proper means, to competitors such as

Southerland and/or Defendant ABS, Inc. who can profit from its explicit and/or implicit and/or

intentional and/or inevitable use or disclosure.

59.    IKON has taken reasonable measures under the circumstances to maintain the

secrecy of this information.

60.    The foregoing conduct of Defendants constitutes a misappropriation and misuse

of IKON's confidential, trade secret information.

61.    As a consequence of the foregoing, IKON has suffered and will continue to suffer

irreparable harm and loss.

**COUNT IV**

**BREACH OF DUTY OF LOYALTY AND/OR FIDUCIARY DUTY**

62.    The allegations of Paragraphs 1 through 61 are incorporated herein by reference

with the same force and effect as if set forth in full below.

63.    Upon information and belief, Southerland has violated the common law duty of

loyalty and/or fiduciary duty arising under her employment relationship with IKON in that, while

employed by IKON, Southerland schemed to solicit and divert IKON customers on behalf of

Defendant ABS, Inc., to recruit IKON employees to join ABS, Inc. to divert IKON's clientele,

and/or schemed with others to use and/or disclose to and/or on behalf of an IKON competitor the

confidential information contained in IKON's customer and business records, to misappropriate

IKON's trade secrets and confidential business information, to divert IKON's goodwill, standing and market advantages, and to otherwise act in a manner harmful to the employer whose best interests Southerland was under a duty to promote.

64.     As a consequence of the foregoing, IKON has suffered and will continue to suffer irreparable harm and loss.

### COUNT V

### UNFAIR COMPETITION

65.     The allegations of Paragraphs 1 through 64 are incorporated herein by reference with the same force and effect as if set forth in full below.

66.     Defendants' use, disclosure and/or misappropriation of Plaintiff's confidential and trade secret information, Defendants' deliberate and intentional violation of the direct and/or indirect contractual obligations owed by them to Plaintiff, Defendants' recruitment of IKON employees, Defendants' solicitations and methods of solicitation and diversion of the business of Plaintiff's clientele, and Defendants' misrepresentations to Plaintiffs actual and prospective customers, each and in combination with one another, comprise improper means of seeking to divert IKON customers and constitute acts of unfair competition.

67.     Defendants' acts of unfair competition are without justification, are being committed through improper means, and have proximately caused injury to Plaintiff, specifically including the infliction of immediate and irreparable harm for which there is no adequate remedy at law.

68.     As a consequence of the foregoing, IKON has suffered and will continue to suffer irreparable harm and loss.

794688.1

## COUNT VI

### INTERFERENCE WITH ACTUAL AND PROSPECTIVE BUSINESS RELATIONS

69.     The allegations of Paragraphs 1 through 68 are incorporated herein by reference with the same force and effect as if set forth in full below.

70.     Defendants have intentionally interfered with Plaintiff's actual and/or prospective business relationships, without justification, and by the utilization of improper means, including, inter alia, by using confidential information concerning the identity and purchasing needs and/or transaction histories and profiles of Plaintiff's customers, by using the confidential transaction prices, proposed terms, known opportunities, potential solutions, service agreement terms and other account-related information concerning Plaintiff and its customers, by breaching, inducing the breach, or interfering with the restrictive covenants and other contractual obligations of IKON's current or former employees, engaging in and making misrepresentations to actual and prospective IKON customers, by recruiting and attempting to recruit IKON employees to work for Defendant ABS, Inc. in the same sales territory for which Southerland was responsible at IKON for an improper purpose, including the solicitation and diversion of IKON customers and the use of customer goodwill for the benefit of a competitor, by failing or inducing the failure to promote IKON's best interests with Plaintiff's customers during the period prior to Southerland's resignation from IKON, and by otherwise using confidential information concerning Plaintiff's customers and making misrepresentations to IKON customers for the benefit of IKON competitors to obtain an improper competitive advantage.

71.     Defendant ABS, Inc., in addition to interfering with the contractual obligations owed by Southerland and the actual and prospective contractual relations between IKON and its customers, has knowingly engaged in, condoned, assisted in and/or supported and benefited from the solicitation and diversion of IKON customers and otherwise marketed itself and/or

Southerland to IKON customers as being able to handle the customers' business by making false

and disparaging representations that IKON is no longer offering its products and services in the

Montgomery area and because Southerland and/or other IKON employees are now employed

and/or will be employed by ABS, Inc. to transition and otherwise handle the business of these

customers without interruption or complication.

72.     As a consequence of the foregoing, Plaintiff has suffered and will continue to

suffer significant harm and loss.

**COUNT VII**

**INTERFERENCE WITH CONTRACTUAL RELATIONS**

73.     The allegations of Paragraphs 1 through 72 are incorporated herein by reference

with the same force and effect as if set forth in full below.

74.     Defendants ABS, Inc. and Southerland, acting in concert with one another and/or

others affiliated with or representing ABS, Inc., have intentionally sought to interfere with the

performance of the contractual obligations owed by Southerland and/or other IKON employees

to IKON.

75.     Defendants' actions have been and are being taken deliberately and without

privilege or justification.

76.     As a consequence of the foregoing, Plaintiff has suffered and will continue to

suffer significant harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts I, II, III, IV, V,

VI and VII, IKON demands judgment in its favor and against Defendants for temporary,

preliminary and permanent injunctive relief, together with damages for all past, present and

future violations and breaches of IKON's rights, exemplary damages based thereon, costs and

attorneys fees, and all such other and further relief and remedies as are justified by the evidence presented at the hearings and ultimate trial in this proceeding.

Respectfully submitted,

By: _____
     Lee H. Zell
     BALCH & BINGHAM LLP
     1710 6th Avenue North
     Birmingham, Alabama 25203
     Phone: (205) 251-8100
     Telecopy: (205) 226-8798

     Attorneys for Plaintiff
     IKON Office Solutions, Inc.

OF COUNSEL:

Thomas T. Loder
James W. Hess
DUANE, MORRIS LLP
One Liberty Place
Philadelphia, PA 19103-7396
(215) 979-1246/1153/1126

Attorneys for Plaintiff
IKON Office Solutions, Inc.

DATED:    October 6, 2005

**DEFENDANTS TO BE SERVED**

Martha Southerland
1832 Edinburgh Street
Prattville, Alabama 36066

ABS Business Systems, Inc.
C/O Registered Agent: Thomas W. Morris
898 Plantation Way
Montgomery, Alabama 36117

794688.1